Good morning, your honors. My name is Lawrence J. Littman. I am the attorney for the appellant Michael Palumbo. On my right at the council table is the U.S. government, Elizabeth Olsen, appearing on behalf of the appellee. I would like to thank the panel for hearing our appeal, and I would like to reserve five minutes for rebuttal. All right. The case before you is a review de novo of the test of whether probable cause for the arrest occurred. The allegations by the appellant are that it indeed did not, because on the day in question, there had not been committed an offense, nor was there about to be committed an offense on that day. All that had happened was a phone call was made to an undercover by an undercover to a fellow named Mike, who said he would agree to meet him. He did not agree to sell drugs on the phone. Was there a request made for drugs to be sold, though? There was a request that I would like I was told that I would like to buy a teener. I was told I could get a teener. Isn't that drug parlance? Yes, but if someone called me and said, I heard I could get a teener from you, I might say, well, I'd like to meet you. Why? Who is spreading these rumors or these discussions about selling drugs? He does not say, I will, okay, I'll meet you to sell the drugs. You say, I'll meet you. And so the testimony that the law is in fact probable cause, then probable cause doesn't have to rise to the level of proof beyond a reasonable doubt. So why wasn't that enough to give the police cause to investigate further? Well, it gave them cause to investigate further, and that wasn't the issue as to whether they could investigate. It was whether they could cause to arrest him on that alone. But it developed. Go ahead. No, please. But as the events unfolded, there was more and more. The probable cause was strengthened along the way. Wouldn't you agree? Well, that's where we object to the question as to whether the probable cause was strengthened. Well, wasn't there enough, as the government now argues, for at least a Terry stop, and then once the handgun was observed, then there was probable cause? I understand that argument. However, this is an argument after the fact. There was an arrest made. We can affirm on any ground, can't we, since we're reviewing it to no vote? Yes. But there was no gun found at the time of the arrest. There was an arrest, and the gun was found during the arrest. Well, there was a stop. The stop was an arrest. There was no stop. Why wasn't it a stop under Terry? Because there was already an arrest. That's not what happened. I mean, you can try. You would be able to say that on any unreasonable arrest that occurred after. Well, we could have stopped. We could have stopped and investigated him. So in your view, at what point was the defendant arrested? At the point where Sergeant Dumar, who was the calling the investigation, talks to the other officers and said, we couldn't do a bye, and she says, well, if we're going to get him, we better take him now, go arrest him. And she didn't know anything about a gun. Nobody knew anything about a gun. And they then drove in for the arrest. This was not a Terry stop or an investigative attempt where they walk up to the car to discuss something. They pulled up, hammering him in, probably guns drawn, and said, stop, get out of the car. He was under arrest. As soon as that arrest was called and as soon as they approached him and said stop, he was this was not a Terry stop. This was an arrest. And while they're arresting him. How do you make a distinction between the Terry stop and the arrest? I mean, by the officer's motive? No, the circumstance. Or what objectively happened. What effectively happened and was this a Terry stop. You would have arrests all over the place if every time you wanted to do something was formulated on a Terry stop. You would have people being. That's what happens generally. The police will stop someone to question them, and as events unfold, then the police make a determination whether or not to let the person go on his way or to arrest. But that's not what happened here. What had happened was that they had already went. They already committed the, what I say, the violation of the Fourth Amendment. They violated his Fourth Amendment by arresting him without cause. If you can. No, no, no. Let's take it one step at a time. All right? Now, exactly at what point, in your view, did the arrest occur? The arrest occurred when the communication with the undercovers finished, and they advised the sergeant that they couldn't do a bye, and the sergeant says, okay, we've got to arrest him now. And upon that command to arrest, Bork in the vehicle moves in for the arrest and pulls up and locks the car, and another car comes behind and blocks him, and that's when he gets out and says, stop, get out of the car. That's when the arrest took place. No, but what distinguishes that from a Terry stop or a detention? Because that's not what a Terry stop is. I know, but what's the difference? I mean, you just keep giving these categorical answers, but explain the difference to us. Well, a Terry stop is when you pull someone over and say, could you pull over, please? I'd like to ask you some questions. You don't have to say please. You have to say please. Or a Terry stop. So you pull somebody over, right? You pull somebody over, which is exactly what they did here, right? They blocked him in, yes. What's the difference? The manner in which it's done, the force by which it's done. The force? Yes. Did they ram his car? No, but they pulled up right up to it, so he wasn't allowed. The closer you get when you're caught, the closer it becomes to becoming an arrest? Yes. I think that's the distinguishing factors. I think the Terry stop is just that. It's an investigatory action. And I don't think the Court who created the Terry stop or the Terry case would have said, okay, every arrest can be justified if it could be a Terry stop, because the Terry stop is an invasion of the individual's rights. However, they've said, well, for the purpose of the investigation, we can stop someone and make inquiries of them. And, of course, they don't have to ask. And that's what happened in this case, isn't it? No, they stopped him. They didn't make any inquiries. They stopped him. They said, get out of the car. And then when they said get out, why? Because that's what the arrest was. They didn't say you're under arrest. They said stop, get out of the car, don't move. At that point in time, he was ‑‑ his freedom was inhibited. They didn't say we would like to ‑‑ But in a Terry stop, your freedom is inhibited until the police can investigate further. So what's the difference here? Aside from your reliance on the subjective views of the officers, which we don't consider in probable cause determination. Right. Those are my submissions. With respect to the final, and I'm running out of time. With respect to the final argument. I'm sorry, forgive me, Juan. Yes. You said before that they probably had their guns drawn, but I don't see that the record taking it for these purposes most favorably the government supports it. They didn't draw their guns until after they saw his handgun. I think that's correct. Okay. Now, even for the assumption that there was a valid arrest, they still don't get the valid inventory of the vehicle. At that point, if there was a valid arrest, they could search him, they found a gun, they found him with possession of a gun. There was no basis to search the vehicle. The searching of the vehicle came from what was called a valid compound of the vehicle and inventory pursuant to the compound. There was no availability to search that vehicle. Why couldn't they search the vehicle because it was a rental car? Yes. But under the policy, that's not the exception to the rule of the statement that the judge accepted, and that's why there's we submit clear error on the basis of the trial judge. The ---- Now, wasn't there why wasn't there a waiver by you or whoever handled the case? It's submitted that there wasn't a waiver to the extent of the we're not arguing that the Rule 12 suppression should be allowed. We're arguing under 52 of the Court of Appeal rules, which allows the court to review a plain error. And in this case, it's submitted that there was a clear error. Yes. But it's not a clear error situation. It's a waiver situation. The rules say if you want to suppress, you have to raise it, and if you don't raise it, you waive it, and that's what happened here. I don't think it's a plain error. It's a waiver situation. When the ---- My time is up. Go ahead and answer, please. We'll give you time for rebuttal. All right. Thank you. When the court accepted the evidence, that evidence was presented. And any evidence presented has to be proper evidence. There's an exception. So if you don't object to it, it is proper. No, it's not, because that's where the issue comes about, is that there's a plain error in the judge that the judge should not accept evidence that's not admissible. There was no warrant for this particular ---- So you're saying, let me make ---- supposing the defense lawyer below had actually gone up and said, Judge, we knowingly, willfully, and voluntarily waive any objections to the search of the vehicle, are you saying that this Court could still consider that under plain error? Yes, because Rule 52b does not ---- gives the discretion to correct plain errors by ---- You're under 12b, though. We're ---- Right. I'm not arguing the case under 12b. I'm not arguing this case under 12b. But you can't get around your waiver by using a different rule if there's a specific rule that governs the situation. You can't get around that rule of waiver by arguing a different rule. Well, I'm not suggesting that there was a waiver. I'm suggesting that there might have been a forfeiture, and there's a distinction between forfeiture and waiver. But our cases seem to say it's a waiver if you don't bring it up under Rule 12. It's a waiver and not a forfeiture. That's your problem. And that's why I submit, I accept the government's argument that Rule 12 prohibits this argument. However, my submission is, is that Rule 52 allows this Court to review that for clear error, and I submit that there was a plain error because the judge admitted the evidence without proof of it being exception. All right. Thank you, counsel. We understand your argument. We'll give you one minute for rebuttal. Thank you. We'll hear from the government. Good morning. May it please the Court. Elizabeth Olson on behalf of the United States. Were you trial counsel? No, I was not. When the undercover, when the detectives received the defendant's first name and cell phone number, along with information that he was selling methamphetamine out of various locations in northwest Las Vegas, the undercover detective called and asked the defendant to, if he could sell her some methamphetamine. Didn't use the word methamphetamine, though. No, a tiner, a tiner, which is a sixteenth of an ounce of methamphetamine. Everything that the detectives heard the defendant say and saw the defendant do from then on, up to and including the manner in which he ultimately refused to sell the drugs to the undercover officer, gave the officers probable cause. If what cause had probable cause ripened, in your view? I think they probably had probable cause, you know, first he told her, first when she called and said, you know, can you sell me a tiner, he said, how did you get this phone number? And she said, well, I know so-and-so gave a mutual name. And he said, okay, well, go to the corner of Cheyenne and Jones in northwest Las Vegas and call me when you get there. Was there probable cause at that point? Probably not. I mean, you know, it's a judgment call. I would say that once she got there and called him and said, and he said, I'm down at the gas station, I'm in a Ford F-150 pickup truck. At that point, you know, they had seen there was this other car at the first location that was circling around, stopped, made a phone call, and then left and went to the gas station. Was there probable cause at that point? I think so. So why wasn't he arrested at that point? The, you know, the officers never know what the judge is going to think. I mean, you know, you always want to get more. You always want to get the actual sale. Once you get the actual sale, I mean, you're going to try to get that. Even though you might not need it in every single case, the officers are always going to try to get that because that's, you know, that's stone cold evidence. In this case, after, you know, he directed her to the gas station, the officers saw the women from the Blazer who had been at that first location, who had stopped, had made a phone call, had gone to the gas station, saw a hand-to-hand, some kind of hand-to-hand transaction with the defendant, with the women from those cars, from that car. At that point, the undercover, when she gets out of the car and she says, hi, I'm Stacy, I talked to you on the phone. He says, I haven't dealt with you before, have I? And she said, no. And he said, well, you know, I need, I've never dealt with you before. I'm not going to deal with you. You need to have. And she said, oh, I'm a friend of, you know, so-and-so's. And he said, well, you have to have that person call me because I'm not just going to deal with you if I haven't dealt with you before and don't have a proper introduction. Now, that is the statement and the behavior of a cautious drug dealer. That is not the statements and behavior of a, you know, case of mistaken identity. Kennedy. But being a conscious drug dealer is not a crime, is it? I'm sorry? I say, you said that's a statement of a conscious drug dealer. Being a conscious drug dealer is not a crime. Yes, actually, it is. Why? You have to have possession. You have to do something. You can't just be in a state of being and that can't be a crime. Well, I think the fact that they had seen the earlier hand-to-hand transaction, I think that the defendant's statements suggested that the reason he was not going to sell them drugs right then and there is because he hadn't gotten a proper introduction. I know that. But he's saying, I'm not going to sell you drugs. So how can that be a crime? Or how can that be evidence of probable cause? I know if you deny, you know, if you reject a transaction. You're saying because he refused to deal, that's probable cause. No, no, no. I'm saying that that, along with, like I say, everything that they heard him say, everything that they saw him do, up to and including him saying, I'm not going to sell you drugs because I haven't gotten a proper introduction to you. That suggests, I mean, we don't know. You're saying that he had previously agreed to the transaction and that the fact that he was now being super cautious didn't mean that there wasn't now probable cause to arrest him because now you knew for sure that he was a dealer and he had previously agreed to the transaction. I believe that's true. And also because, I mean, honestly, once they saw him, once he took them, once he directed the officer to the second location and he was there in the vehicle that he said he would be in, that certainly would have been enough for a Terry stop. But whether, you know, I think it probably would have been enough for the arrest, but once they saw the hand-to-hand transaction with the women who had been in the blazer at the other location. Was it confirmed that it was a drug transaction? I mean, the people who saw it, nobody ever definitively said it was a drug transaction. They just saw an exchange of something. Exactly. Exactly. And in the district court, in the motion to suppress or in the hearing on that motion to suppress, he said he acknowledged that meeting and said that they were exchanging a set of house keys. By the way, in your view, at what point was the defendant arrested? That is such a – that is a – that's a really hard question. I mean, when – you know, I mean, we've got cases that say just because – I mean, even if they had their guns drawn, that doesn't necessarily make it an arrest. Even if they had handcuffed him, that doesn't necessarily make it an arrest. But that's a very important question for this case, so we need an answer. It's our job to ask hard questions. It's your job to answer. It's your job. I would – well, I would say two things. First of all, I actually don't think that it's necessary for this case because I think they had probable cause to arrest. So I – so I don't think the question – But look, unless we know – until we know at what point he was arrested, we can't determine if there was sufficient probable cause at that point. Yes. So we need for you to tell us, definitively, when he was arrested. So I think the question then – just to – I think the question is was he arrested before or after they found the gun, right? I mean, I think that's kind of what it comes down to. And what I'm saying – and I will try to answer that question – but what I'm saying is because they didn't need the gun to have probable cause to arrest, it doesn't matter if it was – if they had arrested him before they found the gun because they had the 12 factors that the magistrate had found to support the arrest, even if you disregard the other three or four hand-to-hand transactions that one officer said that he saw. But was he prosecuted for drug possession? Possession. It was possession with intent to distribute, also felon in possession, and also use of a firearm in furtherance of a drug trafficking offense. So if he – okay. Was the search that discovered the handgun, was that incident to an arrest or not? No. And this is why I think he probably wasn't – I mean, an arrest is when your freedom of movement is restricted comparable to being in custody, or comparable to an arrest. That's when it's custodial. Well, you can't define arrest with arrest. You should suggest in your brief that, you know, this could be a Terry stop, but wasn't it far more aggressive than is comparable to a Terry stop? Well, there are a whole lot of cases that say that it's really not about the aggression, because when, you know, we've got cases that say just because they use force, just because they handcuff, just because they draw their guns doesn't necessarily make it an arrest. I'm looking at United States v. Bravo, which is 9th Circuit, 2002. Quote, in looking at the totality of the circumstances, we consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods, and how much the plaintiff's liberty was restricted. Close quote. So at least this Court has said before that an important factor is aggressiveness. That is true, and that is one. Although the Court has also said that, you know, the use of force in making a stop will not convert the stop into arrest if it occurs under circumstances justifying fears of personal safety. Now, in this case, we've got boatloads of cases that say drugs and guns go together. And when, you know, when there's a suspicion or probable cause about drugs, there are frequently firearms present. If that were the state of mind of the officers in this case, they would have drawn their guns sooner than they did. They didn't draw their guns until they saw he had a handgun. What happened is, from what I understand from the testimony, they sort of, two cars came up to the defendant quite quickly. They got out. They said, he was getting back into his truck. And they said, get out of the truck. He turned, and as he turned, virtually instantaneously they saw he had a gun in his front hand pocket. So as soon as he turned. Now, you know, he's turning, he's moving, he isn't handcuffed, he isn't restrained. They haven't touched him. I mean, they haven't taken him into custody. I think at that point, you know, it's a fine line. I would say that until they actually take him. I mean, when the police say, stop, you're under arrest, are you under arrest then or are you under arrest after you stop and they take you? I mean, you know, it seems to me that until the arrest. You know, the arrest doesn't happen until they take him into custody. Until they actually. That's not what our cases say. That's actually a tough question. I'm not entirely sure where that line is. I mean, I think that. And I guess, you know, and I didn't devote too much energy to this, mental energy to this question because it seems to me, I mean, the magistrate made 12 findings, one of which the defendant disputes on appeal. But these other 11 findings clearly indicate or clearly give the officers probable cause to do the arrest. The district court judge agreed with that. Am I? Oh, I'm sorry. I'm over my time. I didn't notice. You are. Any other questions? No. It appears not. Thank you. Thank you. We'll give you one minute for rebuttal, counsel. Thank you, Your Honors. Indeed, it was not a crime to, there was not a crime committed that day. As Justice indicated, he was not going to go through the deal. There was no crime. There was no cause to determine that there was a crime because it didn't happen. It was an offense just to be a drug dealer. He was a drug dealer. That's not the issue here. If the issue was, is he a drug dealer, there wouldn't be one. The issue is, was the arrest lawful and was the inventory lawful? Well, if I agree with you to sell you some drugs, and then when someone comes up to the drug dealer and says, I'm the person who's purchasing the drugs, and you say, well, I don't know you by sight. So before I will sell you the drugs, I'm still happy to sell you the drugs. But before I will sell you the drugs, you've got to get so-and-so to vouch for you. Why is that not still a person who possesses with intent to distribute? I believe that is, but that's not what happened here. I submit that the facts that were there, there was no agreement. He never intended to sell drugs that day to this person. He intended to meet this person. And so for there to be an agreement, it would be a conspiracy to sell drugs. And there has to be an agreement. So his meeting was not a conspiracy, the overt act going to be meeting. There was no agreement contemplated. If he said, yeah, I'll sell you drugs, I'll meet you here, they go, there is a conspiracy. I would submit that's not what happened. He just said, I'll meet you. She said, I heard you sell drugs. He says, I'll meet you. And he goes to meet. And that's all that happened. Final comment, last comment was, and it's for the purposes of the inventory search, it's submitted that that inventory search was invalid because it was not pursuant to a proper compound. And the Supreme Court has said that any inventory search pursuant to a proper impound has to be pursuant to policy. And this was not pursuant to the policy. The judge had no evidence of the policy. And the only evidence was that he had checked off the box. He could say, well, I inventory this because I held up the stick and it blew to the left. That's all. Okay, counsel, we understand your argument. Thank you to both counsel for your argument on this case. The case just argued is submitted for decision by the court.
judges: Tashima, Rawlinson, Cjj Rakoff (S. New York), Dj